◼ In the Matter of ROBERT J. HICKEY et al., Petitioners, v TAX APPEALS TRIBUNAL OF THE STATE OF NEW YORK et al., Respondents. [617 NYS2d 961] —Mikoll, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Tax Appeals Tribunal which sustained personal income tax assessments imposed under Tax Law article 22.

Petitioner Robert J. Hickey (hereinafter petitioner) is a partner in the Washington, D.C. office of Kirlin, Campbell and Keating, which also has a New York office. On November 1, 1982, the Department of Taxation and Finance issued to petitioner a notice of deficiency for 1980 in the sum of $6,331.04 plus interest, with a notation attached explaining that a nonresident "member of a partnership which carries on business both within and without New York State * * * is taxable upon the portion of his net distributive share of partnership income which is apportioned to New York". The attachment also noted that only 20.7% of the law firm's "Federal partnership income" was "Washington D.C. office income", that the remaining 79.3% was New York income and imposed New York tax on this percentage of his partnership income.

A like notice of deficiency for 1981 New York income tax was issued to petitioner in the amount of $6,605 plus interest by the Department on May 16, 1985. The Department determined "the partnership's New York allocation percentage for the tax year 1981 to be 77.19%" and calculated New York tax on this percentage of petitioner's income.

Petitioner challenged both deficiency assessments in administrative petitions noting that "[t]he factual situation is identical to the situation" in *Matter of Weil v Chu* (120 AD2d 781, *affd* 70 NY2d 783) except that "there existed a different partnership document" governing the law firm's operation and a "different net flow to New York" for the years in question. Net flow reflected the net income of the law firm's Washington office after all expenses, salaries and partnership distribution shares were paid. These funds were available to "flow" to New York for the benefit of the firm's New York partners.

Petitioner stated in his affidavit sworn to June 21, 1990 that during 1980 and 1981 he "did no work in New York", was "not admitted to practice in New York" and "engaged in no income-producing activity in New York". He resided exclusively in Maryland and "received no benefit or service including such items as schools, police, fire and health, streets or sewers from New York". Petitioner maintained "there was a total functional, managerial, and horizontal separation between [the Washington and New York] offices" of the law firm which each office "controlled separately" by its own partners and without either office interfering with the other. Each office had "its own separate client base", kept separate records and "billed and collected separately", with separate bank accounts. He stated that partnership income "was not determined by either points or shares but depended solely upon a judgmental factor which primarily rested upon the net income for the particular office and for the particular partner in question", that his income "was determined primarily by his own receipts and secondarily by receipts of the Washington office". He also averred that "the fees generated in the Washington office were sufficient to cover its expenses and partners' income", providing "a net flow to New York".

The partnership agreement governing partnership operations provided that every partner in New York and Washington was assigned a certain number of "distributive units" of the firm, with net revenues of the firm distributed among the partners "in accordance with their distributive units". The complete and sole management of the firm was vested in the management committee made up of 16 named partners from

both offices. Although petitioner acknowledged that the partnership agreement governed the firm's operations during 1980 and 1981, petitioner did not explain the apparent discrepancies between his affidavit and the terms of the agreement.

The controversy was determined on submission by agreement of the parties. An Administrative Law Judge (hereinafter ALJ) denied the administrative petitions and sustained the notices of deficiency. The ALJ found as a fact that the partnership agreement stated "that net fees were distributed among the partners in accordance with their distribution units", that the "net income and allocation [to partners] were determined by gross fees" less expenses for the entire firm, and that "the sole management of the firm was vested in a management committee which was comprised of partners, apparently without regard to their location". The ALJ found that "[j]ust as in the *Weil* case, the record herein demonstrates that petitioner Robert Hickey was a member of a New York partnership which derived most of its income from New York State", and concluded that petitioners did not meet their burden of proving that the deficiency assessment was improper (Tax Law § 689 [e]).

Petitioner appealed the ALJ's determination to respondent Tax Appeals Tribunal claiming, *inter alia,* that the findings of fact concerning the law firm's operations as reflected in the partnership agreement "are false and also inconsistent with other findings", without otherwise addressing the issue. Subsequently, the Tribunal affirmed the ALJ's determination and adopted the ALJ's findings of fact in substantially identical form. The Tribunal, like the ALJ, found the *Weil* case practically indistinguishable, opining that "under identical financial arrangements to the ones we have here", this Court found petitioner "subject to taxation in New York as a non-resident partner". Distinguishing petitioner's situation from that in *Farmer v State Tax Commn.* (144 AD2d 720), the Tribunal noted that this Court had relied on "uncontradicted documentary evidence" establishing that there was no sharing of profits or losses between a New York and a Washington law firm.

By contrast, here "the written agreement provided for the total sharing of profits between D.C. and New York". Further, the Tribunal pointed out that "[e]ven under the financial arrangements alleged by petitioner as actually being in operation during this period, there was a non-reciprocal, or unilateral, sharing, with the D.C. office sharing its profits with the New York office". The Tribunal concluded that while there

was no true partnership in *Farmer,* "here we have a partnership * * * notwithstanding petitioners' assertions that the New York and D.C. offices each had separate clients, collected their own fees, paid their own expenses, and distributed their own income". The Tribunal found the distinguishing fact to be that petitioner here was shown to be a member of a New York partnership with its principal office in New York, and held that petitioner was properly taxed on the portion of his income representing partnership income derived from New York. The Tribunal, relying on this Court's treatment of the identical constitutional objections in *Matter of Weil v Chu (supra,* at 784-786), also rejected petitioner's constitutional argument here.

Petitioners' CPLR article 78 proceeding challenging the Tribunal's decision was initiated in Supreme Court, Albany County, and was transferred to this Court for review pursuant to the order of Supreme Court.

The determination of the Tribunal should be confirmed. This case, as respondents contend, is controlled by this Court's decision in *Matter of Weil v Chu (supra)* and not by *Farmer v State Tax Commn. (supra),* as petitioners urge. The *Farmer* case does not overrule our decision in *Weil;* rather, the two cases are distinguishable. In the *Farmer* case, the record presented two different law firms, one in Washington and the other in New York. The separate income of each of the two law offices in *Farmer* was distributed to the partners in each separate office only. The partners of one office did not have a voice in the management or new partner approval of the other office *(see, Farmer v State Tax Commn., supra,* at 723). In the instant case as in *Weil,* there is a single New York partnership with partnership members in two law offices, New York and Washington.

The written partnership agreement in *Farmer* differs factually from that in the instant case and on the proof presented the trier of the fact could reach different conclusions. In the instant case the partnership agreement indicates that the New York and the Washington offices were jointly managed by a committee of attorneys from both offices and that there was total sharing of profits between the two. There was also evidence (the net flow of revenue from Washington to New York) that the profits were actually shared. In *Farmer* there was insufficient evidence of such essential elements of a partnership between the New York and Washington law firms to subject the Washington partners to nonresident partner income taxes in New York *(Farmer v State Tax Commn.,* 144

AD2d 720, 722). Significantly, petitioner did not address before the ALJ the apparent conflict between the statements in his affidavit relating to so-called oral modifications of the partnership agreement and the terms of the agreement itself. Thus, on the record in this proceeding the Tribunal was free to accept the partnership agreement as governing the operation of the two offices rather than the contrary statements of petitioner (see, Matter of Heffron v Chu, 144 AD2d 729, 729-730). The determination of the Tribunal is supported by substantial evidence, is rational and is not arbitrary, capricious or contrary to law.

Petitioners' constitutional arguments are unpersuasive. As previously noted, Farmer and the instant case are factually distinguishable. Rather, those arguments are substantially identical to those addressed in Weil and we find it unnecessary to discuss those issues further here.

Cardona, P. J., Mercure, White and Yesawich Jr., JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.